STATE OF MAINE                          UNIFIED CRIMINAL DOCKET
CUMBERLAND, ss.                         CUMUCD-CR-13-3500
                                        UCD-CUM-o

STATE OF MAINE,

v.                                      DECISION

JOSHUA LOGAN,

     Defendant

## FINDINGS

1. On May 25, 2013 at 1:00 a.m. in Gorham, Officer Theodore Hatch observed a car pull out of a side street and cross over the white fog line as it turned.

2. Officer Hatch followed the vehicle for two to three miles. During that time the suspect vehicle weaved continuously between the white lines of its lane and twice crossed the centerline completely and then corrected.

3. After the second center line crossing Officer Hatch activated his blue lights. The suspect car made a sudden sharp stop.

4. Officer Hatch approached the car and observed defendant Joshua Logan in the driver's seat. He was alone in the car. Officer Hatch smelled intoxicants coming from the car. He observed that Mr. Logan had bloodshot, glassy eyes.

5. Officer Hatch asked Mr. Logan for his driver's license, registration and insurance. Mr. Logan produced his license but had to be reminded to produce the registration and insurance.

6. Officer Hatch asked Mr. Logan how much he had to drink and Mr. Logan said three or four beers.

7. Officer Hatch told Mr. Logan he had been driving terribly. Mr. Logan responded that he was angry because his designated driver hadn't shown up so he had been

forced to drive. Mr. Logan acknowledged that he knew he shouldn't have been driving.

8. Detective Brian Key then arrived, approximately five minutes after Officer Hatch had stopped Mr. Logan. Detective Key took over the investigation. Detective Key came to the scene because of a federal grant. Detective Key had been assigned to an O.U.I. car financed by the grant and the Gorham police were obviously trying to show that the grant produced results.

9. Prior to the arrival of Detective Key, Mr. Logan had been sitting in the driver's seat of his car. Detective Key asked Mr. Logan to get out of the car to do field sobriety tests. Detective Key smelled intoxicants on Mr. Logan's breath when he got out of the car.

10. Detective Key had Mr. Logan perform the HGN, walk and turn, and one-legged stand field sobriety tests. Detective Key observed five of the six possible clues on the HGN test. On the walk and turn, Mr. Logan fell out of the beginning stance twice, used his arms for balance, made the turn improperly and failed once to touch heal and toes. On the one legged-stand, Mr. Logan swayed from side to side and raised his arms more than six inches for balance.

11. After the field sobriety tests, Detective Key believed he had enough probable cause to arrest. Before effectuating the arrest, Detective Key decided to ask Mr. Logan to rate himself on the one to ten scale.

12. Mr. Logan rated himself a three on the one to ten scale, admitted to Detective Key that he had drunk too much and admitted that he shouldn't have been driving.

13. Detective Key then arrested Mr. Logan for O.U.I.

2

14. Neither Officer Hatch nor Detective Key told Mr. Logan he was free to leave nor did they tell him he was not free to leave. They simply did their OUI investigation.

## ANALYSIS

This is not a close case. Mr. Logan is apparently arguing that the one or two minutes during which Officer Hatch waited for Detective Key to arrive prolonged the detention beyond what was necessary and therefore everything beyond that delay should be suppressed. It is true that delaying an investigation to prop up grant statistics is a dubious business. Nevertheless, the delay was minimal – a minute or two – and it served a police purpose. The police had an abundance of evidence to stop Mr. Logan, question him, have him perform field sobriety tests and then arrest him to have him take a breath test. It would be unreasonable to suppress evidence of a valid O.U.I. stop simply because Mr. Logan spent one to two minutes more in detention during the investigation than would any other defendant in a valid O.U.I. investigation.

Mr. Logan may also be arguing that his response to the one to ten scale question should be suppressed because Detective Key had already formed probable cause prior to that question. Mr. Logan had not been arrested or placed in custody at the time of the question. There is no bright line rule that I know of that requires an investigating officer to end the investigation immediately after forming probable cause. The officer is free to continue to collect relevant information for a reasonable time without mirandizing the suspect so long as the suspect has not been arrested or placed in custody.

For the above stated reasons, the clerk, by reference, will make the following entry on the docket.

Defendant Joshua Logan's motion to suppress is denied in all respects.

3

DATED: September 20, 2013

_W. S. Brodrick_
William S. Brodrick
Active-Retired Justice, Superior Court

4